UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN EDWARD MITCHELL,<br><br>    Plaintiff,<br><br>    vs.<br><br>J. BEARD, et al.,<br><br>    Defendants. | 1:15-cv-01512-GSA-PC<br><br>**ORDER FOR THIS CASE TO PROCEED AGAINST DEFENDANT HUNTER ON PLAINTIFF'S CONDITIONS OF CONFINEMENT CLAIM**<br><br>**ORDER DISMISSING ALL REMAINING CLAIMS AND DEFENDANTS FOR FAILURE TO STATE A CLAIM**<br><br>**ORDER FINDING SECOND AMENDED COMPLAINT APPROPRIATE FOR SERVICE AND SENDING SERVICE DOCUMENTS TO PLAINTIFF FOR COMPLETION AND RETURN WITHIN THIRTY DAYS**<br>**(ECF No. 42.)** |

**I. BACKGROUND**

John Edward Mitchell ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. On October 5, 2015, Plaintiff filed the Complaint commencing this action. (ECF No. 1.)

On October 16, 2015, Plaintiff consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c), and no other parties have made an appearance. (ECF No. 6.) Therefore, pursuant to Appendix A(k)(4) of the Local Rules of the Eastern District of

California, the undersigned shall conduct any and all proceedings in the case until such time as reassignment to a District Judge is required. Local Rule Appendix A(k)(3).

On December 24, 2015, Plaintiff filed a motion for leave to amend the Complaint, together with a proposed amended complaint. (ECF Nos. 12, 15.) On January 7, 2016, the Court issued an order granting Plaintiff leave to amend. (ECF No. 13.) On January 22, 2016, Plaintiff filed the First Amended Complaint. (ECF No. 17.)

On November 14, 2016, the court screened the First Amended Complaint and issued an order requiring Plaintiff to either file a Second Amended Complaint or notify the court that he is willing to proceed only with the cognizable claim found by the court. (ECF No. 35.) On March 13, 2017, Plaintiff filed the Second Amended Complaint, which is now before the court for screening. (ECF No. 42.)

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678. While factual allegations are accepted as true, legal conclusions are not. Id.

To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations to state a plausible claim for relief. Id. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

### III. THE COURT'S PRIOR SCREENING ORDER

In the court's prior screening order issued on November 14, 2016, the court found that Plaintiff stated a claim in the First Amended Complaint only against defendant Sgt. Sanchez for subjecting Plaintiff to adverse conditions of confinement, leaving Plaintiff naked in an unsanitary cell for two hours. (ECF No. 35.) Upon further review of Plaintiff's allegations in both the First and Second Amended Complaints, the court finds that Plaintiff names defendant C/O Hunter as the individual who confined Plaintiff in the cell, not Sgt. Sanchez. Plaintiff's alleges in the Second Amended Complaint that Sgt. Munoz ordered C/O Hunter to confine Plaintiff in the bare cell. (ECF No. 42 at 12 ¶19.)

### IV. SUMMARY OF SECOND AMENDED COMPLAINT

Plaintiff is presently incarcerated at the R. J. Donovan Correctional Facility in San Diego, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR). The events at issue in the Second Amended Complaint allegedly occurred at North Kern State Prison (NKSP) in Delano, California when Plaintiff was housed there while on his way to attend a settlement conference in a prior case. Plaintiff names as defendants Sergeant E. Sanchez, Sergeant L. Munoz, Correctional Officer (C/O) M. Ornelas, C/O M. Hunter, C/O Barella, C/O Thytie, C/O A. Fernandez, Dr. Roska, Nurse E. Laguatan, Nurse G. Rodriguez, and three Doe Defendants (nurses).

Plaintiff's allegations follow. On March 13, 2014, Plaintiff was temporarily housed at NKSP, wearing orthopedic boots, a back brace, and waistchains, which were "medical necessities" issued by a physician. (ECF No. 42 at 7 ¶2.) The wearing of handcuffs behind his

///

back causes Plaintiff immediate pain.  Plaintiff suffers from bipolar disorder, anxiety disorder, anti-social disorder, and other major depressive disorders.

While still in R&R, Plaintiff told C/O Thytie that he had a waist chain chrono and needed to see a doctor or mental health clinician.  C/O Thytie handcuffed Plaintiff behind his back and did not remove the handcuffs despite Plaintiff's complaints of pain.

Sgt. Munoz and two nurses arrived and determined that Plaintiff needed to see medical.  While Plaintiff was being escorted to medical, he complained about Sgt. Munoz' lack of respect towards him and after a verbal exchange, Sgt. Munoz turned the escort around and took Plaintiff back to R&R.  Sgts. Munoz and Sanchez conferred, and then Sgt. Sanchez aggressively stripped Plaintiff of his shoes, socks, and back brace, took him to a dark hallway, and placed him in a standing-room-only cage.  Inside the cage, Plaintiff felt helpless and depressed.  More than once, Plaintiff told Sgt. Sanchez that he needed to talk to someone from the mental health department.  Plaintiff took off his tee shirt, tied it to the top of the cage and began to hang himself, but realized it was impossible because his feet touched the ground.  Sgt. Sanchez looked at him through a window and laughed at him.  After about thirty minutes, C/Os Thytie, Sisk [not a defendant], and Barella opened the cage door and cut down the tee shirt.

C/Os Barella and Fernandez handcuffed Plaintiff again behind his back, applied ankle restraints, and took Plaintiff outside.  Plaintiff asked Sgt. Sanchez for his shoes, socks, and back brace but was told they "could not be found."  (ECF No. 42 at 8 ¶7.)  C/Os Barella and Fernandez positioned themselves under each of Plaintiff's shoulders to keep him upright and prevent his feet from dragging on the concrete blacktop, but they were unsuccessful because Plaintiff's feet were scraped during part of the escort, causing abrasions and extreme pain.

At medical, Plaintiff was slammed face-down onto a padded gurney and asked by John Doe #2 what medications he took and if he was suicidal.  Plaintiff told him, "I need my medication, I take 10 mg. Methadone at this time, I want to talk to someone from mental health."  (ECF No. 42 at 8 ¶9.)  John Doe #2 said, "There are no doctors right now, I'm busy right now, I give him medication later!" and all the C/Os laughed at his response, prompting Plaintiff to say, "What's your names, all I want is names." (ECF No. 42 at 9:2-4.)  Plaintiff

4

was told to "shut up" and face "down," and the ankle restraint chain was connected to his handcuff. (ECF No. 42 at 9:5-6.) Plaintiff was rolled face down "crunching my vertebrates" by defendants Munoz, Sanchez, Fernandez, Rodriguez and John Doe to administrative segregation. (ECF No. 42 at 9:7.) C/O Hunter cut off Plaintiff's paper jumpsuit and underwear, leaving him naked. A "Lanyard/Martin retention chain" was connected to Plaintiff's handcuffs. (ECF No. 42 at 9:11.) Plaintiff walked into the cell, the restraints were removed, and Plaintiff was left there. Plaintiff was laughed at, felt humiliated, and felt like a "slave on the market." (ECF No. 42 at 9:15-16.) C/O Hunter and Sgt. Munoz had no authorization to attach a chain to Plaintiff. Plaintiff is forever scarred psychologically by the memory that he was chained like a slave and walked to a cage.

At about 9:30 p.m., Sgt. Munoz ordered C/O Hunter to confine Plaintiff in a stripped cell that had no mattress, no desk, no seat, no toilet paper, and no other hygiene accommodations that are provided to new arrivals. This cell was unsanitary with feces and urine on the walls and floor. While in the cell, Plaintiff had open untreated abrasions on his feet and knees that burned as a result of the unsanitary conditions. The vent blew out cold air and the floor and walls were caked with dust. Plaintiff was completely naked and had nothing to cover his skin abrasions. Plaintiff believed the walls were closing in and found it hard to breathe. He banged on the cell door yelling for help and Nurse Tisdale responded. She asked if she could treat Plaintiff but was told "no" by C/Os Hunter and Ornelas. At about 11 p.m., Sgt. Villegas and C/O Albany gave Plaintiff a safety mat, blanket, and vest, and Nurse Laguatan gave him medication.

Jane Doe #1 (nurse) denied Plaintiff a doctor to treat his "chronic pain syndrome" due to the right hand fractures that are causing deformity. (ECF No. 42 at 13 ¶27.) Sgt. Sanchez interfered with Plaintiff's medical treatment when he removed Plaintiff's orthopedic shoes and did not return them, instead allowing Plaintiff to receive abrasions from the concrete to his feet as the officers carried him to medical. John Doe #2 (nurse) denied Plaintiff the Methadone medication prescribed for his "chronic pain syndrome" and did not provide Plaintiff with a mental health clinician despite Plaintiff's request and CCCMS level of care he was labeled.

(ECF No. 42 at 13 ¶29.) C/Os Hunter and Ornelas refused to allow Nurse Tisdale access to Plaintiff by not opening the door so she [Tisdale] could treat his abrasions, ignored Plaintiff's requests for medication, and refused or failed to contact someone from the mental health department. Nurses G. Rodriguez and J. Doe #1 falsely reported that Plaintiff refused treatment and refused to sign the form. Dr. Roska conducted a telephonic interview with Nurse Laguatan about Plaintiff, but did not conduct a mental health assessment on Plaintiff. Dr. Roska's actions were deliberately indifferent to Plaintiff's health needs. Plaintiff was not properly evaluated for his risk of suicide.

Plaintiff requests monetary damages, declaratory relief, costs of suit, injunctive relief, and attorney fees.

## V. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

### A. Excessive Force – Eighth Amendment

"The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Hudson v. McMillian, 503 U.S 1, 8 (1992). (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de*

*minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

**Discussion**

Plaintiff fails to state a claim against any of the Defendants for use of excessive force. Plaintiff has not established that he was subject to force of a sort 'repugnant to the conscience of mankind," or that Defendants were not justified in restraining him, knowing that he had tried to hang himself and wanted to meet with mental health staff. There are no allegations that Defendants knew Plaintiff had an existing injury or that he was in considerable pain while in restraints. Plaintiff's allegations that he was slammed onto a padded gurney face down do not describe "malicious and sadistic" use of force to cause harm. Therefore, Plaintiff fails to state a cognizable claim for excessive force in violation of the Eighth Amendment.

**B.    Adverse Conditions of Confinement – Eighth Amendment**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are

sufficiently grave to form the basis of an Eighth Amendment violation. <u>Hudson</u>, 503 U.S. at 9 (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. <u>E.g.</u>, <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994); <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. <u>Id.</u>

**Discussion**

Plaintiff's claim for being carried across a concrete walk, causing him abrasions, does not rise to the level of an Eighth Amendment claim. Plaintiff has not described more than *de minimus* injuries. Further, Plaintiff has not alleged that any of the officers were aware that he was being injured on the concrete, or shown that any of the officers deliberately disregarded a substantial risk that Plaintiff would suffer serious injuries.

However, the court finds that Plaintiff's claim that he was left naked in a cold and unsanitary cell for more than an hour without clothing, a blanket, or toilet paper states a cognizable claim under the Eighth Amendment against Defendant Hunter. "[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." <u>Anderson v. Cnty. of Kern</u>, 45 F.3d 1310, 1314 (9th Cir. 1995); <u>see</u> <u>also</u> <u>Johnson</u>, 217 F.3d at 731-32; <u>Hoptowit v. Spellman</u>, 753 F.2d 779, 783 (9th Cir. 1985). Here, Plaintiff alleges that he was a mental health patient who had tried to hang himself, and he was left naked in cold and unsanitary conditions, without a blanket, toilet paper, or his medication. Such conditions are sufficiently grave to form the basis of an Eighth Amendment violation. Therefore, Plaintiff states a claim for adverse conditions of confinement against Defendant Hunter, in violation of the Eighth Amendment.

///

///

8

### C. Medical Claim – Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a

constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"Under [the deliberate indifference] standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson, 290 F.3d at 1188.

### Discussion

Plaintiff fails to state an Eighth Amendment claim for inadequate medical care, because he has not alleged facts showing that any of the Defendants knew he had a serious medical need and were deliberately indifferent to a substantial risk of serious harm to Plaintiff. It is not enough to make conclusory allegations that Defendants were despicable, knowing, willful, sadistic, malicious, and acted with deliberate indifference. Plaintiff has not alleged sufficient *facts* to state a claim for deliberate indifference. Further, Plaintiff has not shown that he suffered more than *de minimus* physical injuries as a result of Defendants' actions.

### D.     Due Process

Plaintiff claims that his rights to due process were violated when he was confined "in a 'management cell' with the adjudication of a [Rules Violation Report]." (ECF No. 42 at 25:2.)

The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. See Hewitt v. Helms, 459 U.S. 460, 466-68 (1983); see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and Ad-Seg falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison

///

life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted).

**Discussion**

Plaintiff alleges that he spent an hour and a half in a cold and unsanitary management cell, without clothing, toilet paper, or a blanket. These allegations do not rise to the level of an atypical and significant hardship to establish the existence of a protected liberty interest in remaining free from a management cell. A plaintiff must assert a "dramatic departure" from the standard conditions of confinement before due process concerns are implicated. Sandin v. Conner, 515 U.S. 472, 485–86 (1995); see also Keenan v. Hall, 83 F.3d 1083, 1088–89 (9th Cir. 1996). Here, Plaintiff was detained in uncomfortable and unsanitary conditions, but the duration of his detention in those circumstances was only an hour and a half, after which time he was provided with a safety mat, vest, blanket, and his medication. These allegations are not sufficient to show a "dramatic departure" from standard conditions at the prison outside of the management cell.

Moreover, Plaintiff does not allege any specific injury caused by conditions in the management cell. The fact that conditions in detention do not mimic those afforded the general population or in administrative segregation does not trigger due process concerns. Therefore, Plaintiff fails to state a cognizable claim for violation of his rights to due process based on detention in the management cell.

### E. Relief Requested

In addition to money damages, Plaintiff seeks injunctive relief, declaratory relief, attorney's fees, and costs of suit. Any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part, "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

With regard to declaratory relief, "[a] declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985). In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. A declaration that defendant violated Plaintiff's rights is unnecessary.

With regard to attorney's fees, "In any action or proceeding to enforce a provision of section[] 1983 . . . , the court, in its discretion, may allow the prevailing party . . . reasonable attorney's fees . . . . " 42 U.S.C. § 1988(b). Plaintiff's contention that he is entitled to attorney's fees if he prevails is without merit. Plaintiff is representing himself in this action. Because Plaintiff is not represented by an attorney, he is not entitled to recover attorney's fees if he prevails. Gonzales v. Kangas, 814 F.2d 1411, 1412 (9th Cir. 1987).

## VI. CONCLUSION AND ORDER

The Court finds that Plaintiff's Second Amended Complaint states a cognizable claim for adverse conditions of confinement, in violation of the Eighth Amendment, against Defendant C/O M. Hunter, for leaving Plaintiff alone and naked, without a blanket or toilet paper in a cold and unsanitary room for more than an hour. However, Plaintiff fails to state any other claims upon which relief may be granted under § 1983. It does not appear that additional facts would cure the deficiencies in Plaintiff's claims and therefore, Plaintiff shall not be granted further leave to amend. The court provided Plaintiff with ample guidance for curing the deficiencies in his complaint, and Plaintiff has now filed three complaints.

Therefore, this case shall now proceed against defendant C/O M. Hunter for subjecting Plaintiff to adverse conditions of confinement. By this order, all remaining claims and defendants shall be dismissed from this action based on Plaintiff's failure to state a claim, and the court shall initiate service of process.

Based on the foregoing, it is **HEREBY ORDERED** that:

1. This case now proceeds with Plaintiff's Second Amended Complaint, filed on March 13, 2017, against defendant C/O M. Hunter, for subjecting Plaintiff to adverse conditions of confinement in violation of the Eighth Amendment, for housing Plaintiff in a bare, cold, and unsanitary cell without clothing;

2. All other claims and defendants are DISMISSED from this action based on Plaintiff's failure to state a claim;

3. Plaintiff's claims for excessive force, medical care, and due process are DISMISSED from this action for failure to state a claim, without leave to amend;

4. Defendants Munoz, Ornelas, Sanchez, Barella, Thytie, Fernandez, Roska, Laguatan, Rodriguez, and 3 Doe Defendants (nurses) are DISMISSED from this action based on Plaintiff's failure to state any claims against them;

5. The Second Amended Complaint is appropriate for service of process;

6. Service is appropriate for defendant **CORRECTIONAL OFFICER M. HUNTER**;

7. The Clerk of the Court shall send Plaintiff one (1) USM-285 form, one (1) summons, a Notice of Submission of Documents form, an instruction sheet, and a copy of the Second Amended Complaint filed on March 13, 2017 (ECF No. 42);

8. Within **thirty (30) days** from the date of service of this order, Plaintiff shall complete the attached Notice of Submission of Documents and submit the completed Notice to the court with the following documents:

    a. Completed summons;

    b. One completed USM-285 form for defendant Hunter; and

    c. Two (2) copies of the endorsed Second Amended Complaint filed on March 13, 2017;

///

13

9. Plaintiff need not attempt service on defendant and need not request waiver of service. Upon receipt of the above-described documents, the court will direct the United States Marshal to serve the above-named defendant pursuant to Federal Rule of Civil Procedure 4 without payment of costs; and

10. <u>Plaintiff's failure to comply with this order may result in the dismissal of this action</u>.

IT IS SO ORDERED.

Dated: **August 31, 2017**          **/s/ Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE